# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RALPH BAKER, | Consolidated Civ. No. 09-3654 (KM) |
| Petitioner, | |
| v. | **OPINION** |
| MICHELLE RICCI, et al., | |
| Respondents. | |

**APPEARANCES**:

> RALPH BAKER, #370094A
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> Petitioner *Pro Se*
>
> MEREDITH L. BALO, Assistant Prosecutor
> UNION COUNTY PROSECUTOR
> 32 Rahway Avenue
> Elizabeth, New Jersey 07202
> Attorneys for Respondents in Civ. No. 09-3654 (KM)
>
> NANCY A. HULETT, Assistant Prosecutor
> MIDDLESEX COUNTY PROSECUTOR
> 25 Kirkpatrick Street, 3d Floor
> New Brunswick, New Jersey 08901
> Attorneys for Respondents in Civ. No. 09-3710 (JAP)

**McNULTY, District Judge**:

On July 1, 2013, this Court consolidated two § 2254 habeas corpus cases brought by

Ralph Baker. The first, Civil Number 09-3654, challenges a judgment of conviction and seven

year sentence entered in the Superior Court of New Jersey, Union County, in 2004, after a jury

found Baker guilty of theft and third-degree unlawful possession of a weapon. The second

habeas petition, Civil No. 09-3710, challenges a life sentence imposed in November 2005 in the

Superior Court of New Jersey, Middlesex County. Because the issues are parallel, I granted Baker's motion to consolidate the two cases by order and opinion dated June 28, 2013. (09-3654 Docket No. 46) In that opinion I reserved certain issues, which I now decide.

In each case, the State's Answer maintains that the petition should be dismissed because it is untimely, because Baker failed to exhaust available state court remedies or because he has procedurally defaulted his claims. In each case, Baker has filed a Reply. For the reasons expressed below, I find that Baker has not procedurally defaulted his claims, but has failed to exhaust available state court remedies. I will retain jurisdiction and order that each petition be stayed while Baker returns to state court to exhaust his state remedies on each of these claims.

Without prejudging the issues, I note that two of Baker's claims – based on later-discovered DNA evidence, and denial of the right to counsel on appeal –have sufficient merit to warrant further scrutiny. The State should also strongly consider whether the appointment of counsel, as directed by Judge Stern of the Appellate Division, would be the appropriate course. A wrongful failure to appoint counsel, if not remedied, may constitute a constitutional deprivation, and may also support a finding of "cause and prejudice" that would enable a federal court to consider claims despite their having been procedurally defaulted in state court. The preferable course would be for the State to have the first full opportunity to review these claims, and for Baker to have the assistance of counsel in that process.

## I. TIMELINESS

In their Answers, both Union County and Middlesex County argue that this Court should deny a stay because Baker's Amended Petitions were untimely. In both cases, the limitations period began running on "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The New Jersey Supreme Court denied certification on direct review in both cases on October 20, 2008, and the 90-day period to file a petition for certiorari in the United States Supreme expired on January 19, 2009. *See Lawrence v. Florida*, 549 U.S. 327, 332-333 (2007); *Merritt v. Blaine*, 326 F.3d 157, 161 (3d Cir. 2003); *Nara v. Frank*, 264 F.3d 310, 315 (3d Cir. 2001); *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998). Thus the limitations period began to run on the next day, January 20, 2009. Baker's two habeas petitions were dated July 20 and 21, 2009, and were filed by the clerk on July 22, 2009. (Civ. No. 09-3654, ECF No. 1; Civ. No. 09-3710, ECF No. 1). Thus they were timely, with six months to spare.

Middlesex County argues that Civil No. 09-3710 is untimely because certain interstitial periods, such as the time elapsed between state court rulings and the filing of appeals, should count toward the statute of limitations. *See* Answer, Civ. No. 09-3710 at ECF No. 18, p. 10. That is incorrect. As to any time before January 20, 2009, it is not a question of the limitations period running intermittently. The statute of limitations did not begin running *at all* until January 20, 2009, when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A)).

Union County acknowledges the final-judgment rule, which implies that the *original* Petition was filed timely in July 2009. *See* Civ. No. 09-3654, Docket No. 17 at 8. It argues, however, that the *Amended* Petition was untimely because Baker filed it "on or about March 30, 2010,"[1] about three months after the statute of limitations expired. *Id.* at 5. Unless the Amended Petition relates back to the date of filing of the original Petition, Union County is correct.

---

[1] That was the date of the petition, so logically it was mailed to the court on that date at the earliest. *See Houston v. Lack,* 487 U.S. 266 (1988) (under "prisoner mailbox rule," date of delivery to prison officials for mailing is deemed date of filing).

Where an amended habeas petition "clarifies or amplifies a claim or theory in a [timely filed] petition," an amendment "relate[s] back to the date of that petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or insert a new theory into the case." *United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000). The original Union County Petition raised five claims: (1) denial of confrontation of a victim/witness who had returned to Turkey; (2) denial of right to counsel on direct appeal from orders denying new trial motions; (3) actual innocence claim based on newly discovered evidence that DNA from the ski mask matched that of another robbery suspect; (4) denial of transcripts of motion for a new trial; (5) violation of Fourth Amendment when Baker's DNA sample was taken. *See* Civ. No. 09-3654, Dkt. 1-1 at 10-13. The Amended Petition raised four claims: (1) newly discovered DNA evidence of actual innocence; (2) denial of counsel on direct review from orders denying new trial motions; (3) *Kyles/Brady* violation based on allegedly exculpatory evidence recovered from Baker and from his car at the time of arrest; (4) denial of confrontation right when the court admitted the statement of an unavailable victim/witness. *Id.*, Docket No. 6, at 5-10.

Grounds one, two and four of the Amended Petition are essentially identical to grounds raised in the original, timely Petition. Accordingly, under *Thomas*, those three grounds clearly relate back, and must be considered timely.

That leaves Ground Three, which is new. The Court might consider it as an amendment under Federal Rule of Civil Procedure 15(c)(1)(B), which permits a party to raise a new claim or defense, even if untimely, if it "arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading." *Hodge v. United States*, 554 F.3d 372, 377 (3d Cir. 2009). Interpreting Rule 15 in the habeas context, the Supreme Court has held that the new

claim and the original, timely claim(s) must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005); *accord Hodge*, 554 F.3d at 378. I believe that the *Kyles/Brady* claim was not anticipated by the original Petition, and that it is "supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

Ground Three may still be saved, however, by virtue of a prior Order of this Court and the equitable tolling doctrine. As noted above, Baker timely filed his original Petition on July 22, 2009, some six months before the expiration of the one-year AEDPA statute of limitations. On January 19, 2010 (one day before the expiration of the statute of limitations), Judge Wigenton filed a memorandum opinion and order dismissing the petition because it was not submitted on the court-provided standard habeas form. That dismissal, however, was "without prejudice to the filing of an amended §2254 petition on the § 2254 form provided by the Clerk within 30 days of the entry of this Order." The opinion briefly instructed the petitioner that he would be permitted present all federal grounds only after they were all exhausted in state court proceedings. (09cv3654, Docket No. 3) The accompanying order provided as follows:

> [The original petition is] DISMISSED without prejudice to the filing of an amended petition on the § 2254 form provided by the Clerk; and it is further …
> ORDERED that, within 30 days of the date of the entry of this Order, Petitioner shall file with the Clerk an amended petition on the § 2254 form provided by the Clerk; and it is further
> ORDERED that, if Petitioner files such an amended petition within 30 days of the date of the entry of this Order, then this Court will reopen the case and screen the amended petition for dismissal as unexhausted or otherwise, as required by Habeas Rule 4; and it is further
> ORDERED that the Clerk shall serve this Order and the accompanying Opinion upon Petitioner by regular mail, together with a blank § 2254 form, AO 241 (Rev. 10/07) ….

(09cv3654, Docket No. 2)

Baker did file an amended petition, which included as Claim Three a "Kyles-Brady" violation of with holding [*sic*] evidence ...." (*Id.*, Docket No. 4 at docket p. 9)[2] It was filed by the clerk on February 17, 2010, within the 30 day deadline imposed by Judge Wigenton's order.[3] (*Id.*, Docket No. 4) Because the new petition attempted to combine allegations regarding both the Union and Middlesex County convictions, by order filed March 5, 2010, Judge Wigenton rejected it. She "ORDERED that, within 30 days of the date of the entry of this Order, Petitioner shall file with the Clerk an amended petition which includes all available federal grounds to challenge the Union County judgment .... [I]f Petitioner files such an amended petition within 30 days of the date of the entry of this Order, then this Court will reopen the case ...." (*Id.*, Docket No. 5)

Within 30 days of that Order, Baker filed the operative, Amended Petition that is now before the Court. (*Id.*, Docket No. 6)[4] This petition, too, contains the *Kyles/Brady* issue.

In short, this Court retained jurisdiction over the timely filed habeas petitions, invited Baker to file an all-inclusive amended petition within a specified time (which he did), and did not indicate to Baker that any new claims would nevertheless be time-barred. The order of the court came on the eve, almost literally, of the expiration of the statute of limitations. Baker, however, having filed his initial petition some six months earlier, cannot be faulted for lack of diligence.

---

[2]     "Kyles-Brady" very likely refers to *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Brady v. Maryland*, 373 U.S. 83 (1963), both dealing with the prosecution's duty to turn over exculpatory evidence.

[3]     The two accompanying prison forms indicated that it had been processed for mailing on January 28 or 29, 2010. (*Id.*, Docket No. 4 at docket pp. 17, 18). Under the "prisoner mailbox rule," mailing would be timely as of either date.

[4]     The affidavit states that it was delivered to prison officials for mailing on March 30, 2010. This is plausible, as it was received and filed by the clerk on April 7, 2010.

This, in my view, presents a case for equitable tolling of the AEDPA statute of limitations as to Claim Three. *See Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). Equitable tolling is warranted when "principles of equity would make the rigid application of a limitation period unfair." *Munchinski v. Wilson*, 694 F.3d 308, 329 (3d Cir. 2012) (quoting *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998)). A petitioner is entitled to tolling if he shows: (1) that some extraordinary circumstance stood in his way and prevented timely filing; and (2) that he has been pursuing his rights diligently. *Id.; Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "One . . . potentially extraordinary situation is where a court has misled a party regarding the steps that the party needs to take to preserve a claim." *Munchinski*, 694 F.3d at 329-330 (quoting *Urcinoli v. Cathel*, 546 F.3d 269, 275 (3d Cir. 2008)).

Judge Wigenton's dismissals of Baker's petitions without prejudice to refiling within 30 days were a compassionate and entirely proper response to a *pro se* petitioner who was apparently trying his best to conform to court procedures. It appears that she intended to retain jurisdiction over any subsequent amended petition and did not intend that a petitioner who complied with her 30-day order would be time-barred. Consequently, the "misleading" terminology of *Munchinski* might itself be misleading in this context; Judge Wigenton was not misleading anyone.

Nevertheless, *if* (for purposes of argument) Judge Wigenton's Order *were* interpreted as having led Baker to miss the statute of limitations, it *would* have been "sufficiently misleading as to constitute an extraordinary circumstance [if it] later operated to prevent [Baker] from pursuing his rights." *Munchinski*, 694 F.3d at 330 (citation and internal quotation marks omitted). That would be inequitable. Since Baker exercised "reasonable diligence" in pursuing his claims,

*Holland*, 130 S.Ct. at 2565, this Court holds that the statute of limitations was equitably tolled. Baker's Ground Three in the Amended Petition relates back and is timely filed. *See, e.g., Munchinski*, 694 F.3d at 330-332; *Urcinoli*, 546 F.3d at 275; *Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir. 2005).

Thus all four grounds of the Amended Petition (09cv3654 Docket No. 6) are timely filed under AEDPA.

## II. EXHAUSTION AND PROCEDURAL DEFAULT OF STATE REMEDIES

The state system is the primary guarantor of state defendants' rights. For that reason, a federal court may consider habeas relief only if the state courts have had the opportunity to address the grounds raised by the petitioner. In short, for habeas review to occur, ordinarily there must be nothing left for the state courts to do. That can happen in two ways: First (and far preferable) is for the petitioner to have exhausted his state court remedies. If a federal constitutional issue remains, the federal court may consider it on habeas. Second is for the petitioner to have missed out on state review by "procedural default" – for example, by blowing a deadline to appeal or failing to raise an issue at all. Generally that is fatal to a habeas claim, unless the petitioner can show good "cause" for the default, and resulting "prejudice." I here conclude that Baker has not procedurally defaulted on his claims, but has not exhausted state remedies, either.

### A. Exhaustion

Middlesex and Union County argue that this court cannot yet consider Baker's claims because he has not exhausted his state remedies. *See Rhines v. Weber*, 544 U.S. 269 (2005);

*Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B). Their objection is well taken.

Section 2254 provides that a writ "shall not be granted" unless (1) "the applicant has exhausted the remedies available in the courts of the State," or (2) "there is an absence of available State corrective process," or (3) "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *see also Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert*, 134 F.3d at 513; *Toulson v. Beyer*, 987 F.2d 984, 987-89 (3d Cir. 1993). Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "Thus, . . . if the petitioner fails to satisfy the exhaustion requirement prior to filing a federal habeas petition and none of the exceptions apply, the federal court is precluded from granting habeas relief to the petitioner." *Lambert*, 134 F.3d at 513-14.

To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In New Jersey, that requires presentation to the Superior Court of New Jersey, Law and Appellate Divisions, and to the New Jersey Supreme Court. *See Toulson*, 987 F.2d at 987-89. The federal issue, moreover, must be fairly presented "in a manner that puts the state courts on notice that a federal claim is being asserted." *Rainey v. Varner*, 603 F. 3d 189, 198 (3d Cir. 2010).

As set out in more detail in my opinion of June 28, 2013 (Docket no. 46), Baker appealed from both the Union and Middlesex county judgments. When new DNA evidence came to light, Baker filed motions in both pending appeals seeking a remand to the Law Division. Very briefly, the witnesses indicated that the robberies were committed by a person with some combination of a mask, a black bag and a gun. A mask, bag, and gun were found, not on Baker's person, but behind a building in a lot near the Union County robbery site, an Amoco gas station. They were admitted in evidence in the Union County case.

As to the Union County appeal, on October 16, 2006, Appellate Division Judge Stern remanded the case in part, but allowed the direct appeal to proceed as to the five issues raised in Baker's previously filed appellate brief.[5] (Civ. 09-3654, ECF No. 18-7.) On February 21, 2007, the Appellate Division affirmed the Union County theft conviction, but reversed the separate judgment for possession of a firearm. *See State v. Baker*, Docket No. A-3855-04T4 slip op. (N.J. Super. Ct., App. Div., Feb. 21, 2007) (Dkt. 18-9); *see also* ECF No. 27-1 (Union County's subsequent dismissal of the reversed firearm charge). On October 20, 2008, the New Jersey Supreme Court denied certification. *See State v. Baker*, 196 N.J. 592 (2008) (table).

As to the Middlesex County appeal, Judge Stern ordered a complete, not partial, remand. He dismissed without prejudice the entire direct appeal of the Middlesex County judgment and remanded the entire case to the Law Division, so that Baker could move for a new trial based on the newly discovered DNA evidence. Civ. No. 09-3710 (JAP), ECF No. 1-2 at 7.

---

[5]     On direct appeal from the Union County conviction, Baker argued: (1) he was denied a fair trial because the jury heard testimony concerning the nature of Baker's prior conviction; (2) he was denied the right to a fair trial by his wife's testimony elicited by the prosecutor indicating Baker's prior incarceration; (3) the trial court erred by failing to merge certain counts of the indictment; (4) the sentence was manifestly excessive; and (5) he is entitled to a remand under *State v. Natale*. (Appellate Division Opinion, Civ. No. 09-3654, ECF No. 18-9 at 3.)

Baker filed his motions for a new trial in Middlesex County and Union County, based on (1) the match of DNA from the ski mask with the DNA of an arrested robbery suspect in Hudson County, and (2) a police teletype concerning another robbery of the Amoco gas station that might have suggested that the mask, bag and gun could have been tied to that robbery, instead of the one of which Baker was convicted. (Civ. No. 09-3654 at Dkt. 27-2; Civ. No. 09-3710, Dkt Nos. 1-2 at 13-14 & 18-9 at 3-4.)

Something of a procedural tangle followed. (It is described more fully below, and in my June 28, 2013, opinion.) Baker's counsel for the two new trial motions did not file appeals from their denial. Baker filed untimely *pro se* appeals to the New Jersey Superior Court, Appellate Division. Judge Stern of the Appellate Division dismissed those appeals as untimely and invited Baker to file a proper motion to file the appeals *nunc pro tunc*. Baker did not file a proper motion, and sought certification of the dismissal of the appeals, which was denied. *See State v. Baker*, 196 N.J. 592 (2008) (table). Baker never filed for post-conviction relief (PCR).

In short, none of the grounds now raised by Baker were exhausted.

*As to the Union County conviction*: (a) On direct appeal, Baker litigated five claims (not the same claims he now pursues federally), and obtained a limited remand only for purposes of the new trial motion; and (b) after denial of his new trial motion on remand, he did not effectively appeal, and did not pursue PCR.

*As to the Middlesex County conviction:* (a) On direct appeal, Baker sought and obtained a complete remand without any disposition on the merits, in order to pursue a new trial motion; and (b) after denial of his new trial motion on remand, he did not effectively appeal, and did not pursue PCR.

As to these unexhausted claims, this Court is statutorily precluded from granting Baker a writ, even as to potentially meritorious federal claims. *See* 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); *Lambert*, 134 F.3d at 513.

C.    Procedural Default

I consider in addition, and in the alternative, whether Baker procedurally defaulted his claims under state law. If his claims were denied because he failed to raise them in accordance with state procedural rules, that is not generally speaking an issue that can be addressed on federal habeas. Rather, the state court's rulings may be said to rest upon "an independent and adequate state ground" – independent, that is, of any federal constitutional infirmity. *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). *See also Walker v. Martin*, 131 S.Ct. 1120, 1127 (2011). When a petitioner's procedural default has prevented the state courts from reaching the merits of his claims, federal habeas review of those claims is ordinarily barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

I say "ordinarily" because a slim possibility of federal relief remains. Habeas relief is available for a defaulted claim if the petitioner "can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations and internal quotation marks omitted); *accord Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Whether an issue was procedurally defaulted under state rules can be a complex determination. A discretionary denial is not enough. Federal review is barred only when state "review is foreclosed by 'what may honestly be called 'rules' . . . of general applicability[,] rather than by whim or prejudice against a claim or claimant." *Leyva*, 504 F.3d at 366 (quoting

*Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005)). Thus the state rule barring petitioner's claim must be one that is "firmly established and regularly followed." *Walker*, 131 S.Ct. at 1127 (quoting *Beard v. Kindler*, 558 U.S. 53, 61 (2009)). On that issue, a reviewing federal court may consider whether "(1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions." *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (*quoting Jacobs v. Horn*, 395 F.3d 92, 117 (3d Cir. 2005)).

Here, Middlesex County argues that Baker procedurally defaulted his claims at the Appellate Division level, focusing on the May 17, 2008, order entered by Judge Stern. (Middlesex Answer, Civ. No. 09-3710, ECF No. 18 at 12.) As this was the last reasoned state court ruling, this Court must determine whether it was a qualifying application of a state procedural rule. *See Harris v. Reed*, 489 U.S. at 262; *Cabrera v. Barbo*, 175 F.3d 307 (3d Cir. 1999); *Toulson*, 987 F.2d 984. On remand from the Appellate Division, Baker filed in Middlesex and Union Counties his motions for a new trial based on newly discovered evidence consisting of the DNA match from the ski mask and the Union police teletype. Union County Judge Stuart Peim denied Baker's motion for a new trial from the bench and entered an order on September 17, 2007.[6] *See* Civ. No. 09-3654 Docket No. 27-2. On August 22, 2007, Middlesex County Judge Stolte denied Baker's motion for a new trial on the ground that the new evidence would not have altered the jury's verdict.

Baker's counsel did not file any appeal after the denial of the new trial motions.

Eventually, in the Appellate Division, Baker himself filed *pro se* motions "to proceed as

---

[6]     In response to Judge Wigenton's order requiring a supplemental answer, the Union County prosecutor stated that the court reporter was unable to locate the record of this proceeding. *See* Civ. No. 09-3654 Docket No. 26 at 6.

indigent," "for free transcripts," "for assignment of counsel," "to file notice of appeal as within time," "for summary disposition," "for final remand," and "for further relief." (Order, Civ. No. 09-3710, ECF No. 18-65.) The Appellate Division, *per* Judge Edwin Stern, denied those motions in part and granted them in part. I reproduce Judge Stern's March 17, 2008, order here:

> Defendant appealed from a judgment entered in Union County on indictment 02-10-1265. A motion to remand was denied on October 12, 2006. However, defendant was permitted to proceed on his DNA-related claims while the appeal was pending. See M-6112-05 in A-3855-04T4 following the court's letter of August 23, 2006. On October 12, 2006, we also dismissed defendant's appeal from a Middlesex County conviction (indictment 02-10-1239) without prejudice. See M-6113-05 in A-3867-05T4 and letter to counsel dated August 23, 2006. The Union County appeal was decided on February 21, 2007. Therein we affirmed defendant's convictions for the lesser-included offenses of theft and unlawful possession of a weapon, but reversed his conviction for having possessed a weapon as a convicted felon. We remanded for further proceedings.

> Defendant has now filed two motions to proceed as an indigent, to file notice of appeal nunc pro tunc and for assignment of counsel. One does not refer to any order, county or indictment number, and while defendant has filed a "certification" and supporting documents, it is not clear what he seeks to appeal. We presume he seeks to reinstate the original appeal and appeal the denial of his application on remand. The second motion relates to the denial on September 12, 2007 of his motion for new trial in Union County apparently following the remand in October 2006. It is not clear from the papers what happened with respect to the remand in the opinion of February 2007. However, the Clerk has learned that the indictment for possession as a convicted felon (indictment 02-10-1264) was dismissed. The dismissal thereof does not make the appeal on the remand on indictment 02-10-1265 timely.

> The court understands that the Law Division denied defendant's new trial motion in Middlesex County by letter opinion dated August 22, 2007, but can find no conforming order. The court does have an order denying his Union County motion entered on September 17, 2007. The defendant's motions contain no certification in proper form concerning his efforts to appeal. He does certify, but not in proper form, that he asked "the Public Defender" and William Welaj, Esq. (designated counsel in A-3855-04T4) to file an appeal in September and October 2007, but does not indicate that he made any request of David A. Ruhnke, Esq., the attorney who represented him in the remand proceedings in both counties.

> The motion for leave to appeal as within time is denied, and the appeal is dismissed without prejudice to a motion for leave to appeal as within time

accompanied by a certification indicating defendant's efforts to seek a timely appeal as to each matter he seeks to appeal. See State v. Molina, 187 N.J. 531, 542 (2006). We add, however, that as the Public Defender represented defendant in both A-3855-04T4 and A-3867-04T4 (Union 02-10-1265 and Middlesex 02-10-1239), he should be represented by that office as both matters involved remands for proceedings defendant now seeks to have reviewed, and the Middlesex County conviction was never reviewed. A copy of this order shall be sent directly to Linda Biancardi, Assistant Public Defender, William Welaj, Esq., designated counsel in A-3855-04T4, and David Ruhnke, Esq., who represented defendant on the remand proceedings.

(Civ. No. 09-3710 Docket No. 18-65).

Baker did not follow up on Judge Stern's suggesting by filing a proper *nunc pro tunc*

motion. Rather, on May 30, 2008, he sent a letter to Judge Stern stating that the Public Defender

"refused to Appeal two convictions (Middlesex, Union Counties), disregarding this Court's

Opinion of March 17, 2008." Civ. 09-3654, ECF No. 1-4 at 9.

The Clerk of the Appellate Division refused to file Baker's letter but wrote:

Your letter raises concerns relating to Judge Stern's March 17, 2008 order on A-2457-07T4 and A-2458-07T4 motions M-3062-07 and M-3076-07.

The last paragraph of Judge Stern's order contemplates your being represented by the Office of the Public Defender.

Your letter indicates you have not had a response from the Public Defender. Your letter cannot be filed because the court does not act on the basis of mere letters. A formal motion would be needed. If you want to try to pursue any type of formal relief at the Appellate Division you would need to file a formal motion complete with clear, comprehensive motion brief and appendix. It is unknown what relief, if any, might result.

There is no question however you should be actively communicating with the Public Defender's Office to resolve this matter. Accordingly your unfiled letter is being forwarded to the office of the Public Defender for whatever action they deem appropriate. We urge you to contact the Office of the Public Defender, Appellate Section . . . to pursue the subject.

Civ. No. 09-3654 Docket No. 1-4 at 12.

Baker failed to file a proper *nunc pro tunc* motion. Instead, on June 12, 2008, Baker filed

a petition for certification of Judge Stern's March 17, 2008 order. (Civ. No. 09-3654, ECF No.

22-10.) On October 20, 2008, the New Jersey Supreme Court denied certification. *State v. Baker*,

196 N.J. 592 (2008) (table).

The question, for purposes of procedural default, is whether Judge Stern closed out

Baker's appellate remedies based on the application of a state procedural rule.

(1) Was Judge Stern's dismissal based on a firm state rule?

Judge Stern dismissed Baker's *pro se* appeal as untimely but invited a motion to file the

appeal *nunc pro tunc,* supported by a "certification indicating [Baker's] efforts to seek a timely

appeal as to each matter he seeks to appeal." (Order, Civ. No. 09-3710, Docket no. 18-65 at 2.)

Stating that the Public Defender "should be" representing Baker on his appeals, Judge Stern was

careful to dismiss the appeals without prejudice. Judge Stern's order does not "speak[] in

unmistakable terms," *Leyva*, 504 F.3d at 366. He does not invoke a rule that is "firmly

established and regularly followed." *Walker*, 131 S.Ct. at 1127 (citation omitted). Rather, he

invites a further application to file the appeal *nunc pro tunc*, which might well be granted in the

interest of justice on appeal from a life sentence. The New Jersey Rules of Court are lenient in

this regard. *See, e.g., State v. Molina,* 187 N.J. 531, 541-42 (2006) (time to appeal extended by

up to five years where court neglected to advise defendant of right to appeal); *State v. Altman*,

181 N.J. Super. 539 (App. Div. 1981) (appeal permitted *nunc pro tunc* where defendant asked

attorney to appeal, but attorney did not); N.J.Ct. R. 2:4-4, comment 2.

Apparently Baker has not sought PCR at all. It is at least suggestive that New Jersey will

relax procedural bars to PCR in the interests of justice. *See generally State v. Afanador*, 151 N.J.

41, 50-53 (1997) (relaxing procedural bars to post-conviction relief); *State v. Marshall*, 148 N.J. 89, 152 (1997) ("Obviously, neither state nor federal interests would be served by so broad an application of our procedural bars as to deny a defendant post-conviction relief . . . and, as a result of that ruling, also preclude habeas relief because of the defendant's inability to satisfy the exhaustion doctrine."); *State v. Preciose*, 129 N.J. 451, 475-76 (1992) ("From our state perspective, finality is achieved when our courts grant or deny post-conviction relief . . . . Where meritorious issues are presented, our interest in affording defendants access to both state post-conviction and federal habeas review outweighs our interest in finality through an unnecessarily-rigid enforcement of state procedural rules. . . .[C]onsiderations of finality and procedural enforcement count for little when a defendant's life or liberty hangs in the balance").

I consider the open-ended language of Judge Stern's order, the unusual circumstances of this case, and the New Jersey courts' somewhat flexible approach to appeals *nunc pro tunc* and the availability of PCR. I cannot find a clear-cut procedural default here.

(2) Is State Court review of Baker's claims clearly foreclosed?

A closely related question is whether state court review is truly foreclosed. *See* 28 U.S.C. § 2254(b)(1)(B)(i). Because procedural default is a matter of state law, a federal court may look for the state court to take the lead in declaring petitioner's claims defaulted.

In *Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993), because the petitioner had not presented three of his § 2254 grounds to the New Jersey Supreme Court, the district court found that the claims were procedurally defaulted under New Jersey Court Rule 3:22-4, which bars consideration of grounds not raised in prior proceedings. The United States Court of Appeals for the Third Circuit reversed, noting that Rule 3:22-4(c) dissolves that procedural bar where "denia

of relief would be contrary to the Constitution of the United States or the State of New Jersey";

that other potential procedural bars were likewise subject to relaxation; and that Toulson "ha[d]

not pointed to any New Jersey case clearly showing he is precluded from relief." *Id.* at 988. The

Court of Appeals held that "the better practice allows a New Jersey court – not a federal court –

the first opportunity to address the question of procedural default under New Jersey law." *Id.* at

988 n.7. Similarly, in *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986) and *Santana v.*

*Felton*, 685 F.2d 71 (3d Cir. 1982), the Third Circuit refused to find a New Jersey procedural

bar, despite the prisoner's argument that relief was unlikely or the procedures futile.

In contrast, *Cabrera v. Barbo*, 175 F.3d 307 (3d Cir. 1999), and *Johnson v. Pinchak*, 392

F.3d 551 (3d Cir. 2004), held that habeas claims brought by New Jersey prisoners were

procedurally barred where *the state courts themselves* had so held. In both cases, the New Jersey

courts had dismissed (presumably with prejudice) PCR petitions as untimely or otherwise barred

by the rules of court. *See Johnson*, 392 F.3d at 555; *Cabrera*, 175 F.3d at 313-14.

This case is closer to *Toulson* than to *Johnson* or *Cabrera*. Judge Stern did not

unequivocally hold that Baker's claims were procedurally defaulted under state law. On the

contrary, he seemed to envision that the Appellate Division would eventually entertain Baker's

appeals. There is an equally strong hint that Judge Stern saw little point in entertaining Baker's

confusing *pro se* filings[7] when, in Judge Stern's view, Baker "should be represented by [the

Public Defender] as both matters involved remands for proceedings [Baker] now seeks to have

reviewed, and the Middlesex County conviction was never reviewed." (App. Div. Order, Civ.

---

[7]     "One [of Baker's motions] does not refer to any order, county or indictment number, and while
[Baker] has filed a 'certification' and supporting documents, it is not clear what he seeks to appeal."
(Order, Civ. No. 09-3710, ECF No. 18-65 at 2.)

No. 09-3710, ECF No. 18-65 at 2.) Judge Stern dismissed Baker's appeals, not finally, but "without prejudice."

To summarize, this Court holds that Baker's federal claims are not procedurally defaulted. Consequently, I do not proceed to the issue of whether there is "cause and prejudice" permitting a federal court to consider them anyway (although much of the discussion in connection with a stay, *infra,* might be relevant to cause and prejudice.) The better view is that the claims are not defaulted, but remain unexhausted. I cannot now review them.

D.   Stay and Abeyance

When faced with a petition that contains unexhausted claims, a district court has four options: (1) stay the petition pending the outcome of state proceedings; (2) allow the petitioner to delete the unexhausted claims and proceed on the exhausted claims; (3) dismiss the petition without prejudice as unexhausted; or (4) deny the unexhausted claims on the merits under 28 U.S.C. 2254(b)(2). *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) *McLaughlin v. Shannon*, 454 Fed. App'x 83, 86 (3d 2011); *Mahoney v. Bostel*, 366 Fed. App'x 368, 371 (3d Cir. 2010); *Urcinoli v. Cathel*, 546 F.3d 269, 276 (3d Cir. 2008).

Option 2 is inapplicable, and Option 3 risky in light of the statute of limitations. Option 4 is appropriate if the unexhausted claims are plainly without merit, but, as explained below, at least two of Baker's claims rise above that threshold. *See Rhines*, 544 U.S. at 277; *Carracosa v. McGuire*, 520 F.3d 249, 255 n.10 (3d Cir. 2008); *Lambert v. Blackwell*, 387 F.3d 210, 260 n.42 (3d Cir. 2004); *Gattis v. Snyder*, 278 F.3d 222, 237-38 (3d Cir. 2002);

That leaves option 1, also known as "stay and abeyance." If a district court finds that a habeas petition contains unexhausted state claims, it may stay the § 2254 petition while the

petitioner returns to state court to exhaust state remedies as to those claims. *See Rhines*, 544 U.S. at 277 ("mixed" petition); *see also Heleva v. Brooks*, 581 F. 3d 187 (3d Cir. 2009) (extending to petition containing only unexhausted claims). "In determining whether a stay should be granted, a Court must consider three main factors: [1] a showing of good cause, [2] the presence of potentially meritorious claims, and [3] the presence or absence of intentionally dilatory tactics." *Gerber v. Varano*, 2013 WL 341470 * 3 (3d Cir. Jan. 30, 2013) (citing *Rhines*, 544 U.S. at 277-78) (bracketed numbers added).

(1) Is there good cause?

The State argues that Baker did not have good cause for failing to exhaust state remedies, and therefore cannot show good cause for a stay. (As noted above, this discussion might also bear on good cause to excuse a procedural default, if that were present.) Baker, on the other hand, alleges that publicly-funded counsel (a) failed to file an direct appeal from the Union and Middlesex County Law Divisions' denials of his motions for a new trial and (b) failed to assist him in filing a properly supported motion to file such appeals *nunc pro tunc*, even after Judge Stern essentially directed them to do so in the March 17, 2008 order.

There has been no fact finding on this issue, and I do not prejudge it. I note also that opportunities for misunderstanding were plentiful; the procedural history was complex, sentencing had occurred long ago, and the case had already been in the Appellate Division. The Public Defender might have seen this case as one that had already been through the direct appeal process. Judge Stern's order, however, implies that the intervening remands were interludes, and that the appeal before him was in substance another phase of the direct appeal. *See* App. Div. Order, Civ. No. 09-3710, ECF No. 18-65 at 2 (Baker "should be represented by [the Public

Defender] as both matters involved remands for proceedings [Baker] now seeks to have reviewed, and the Middlesex County conviction was never reviewed.") I cannot quarrel with the instincts of this distinguished and learned state Judge on this matter of state-law procedure.

On direct appeal, if that is what this was, the Public Defender would ordinarily participate as a matter of course. The Due Process Clause guarantees a criminal defendant the right to the effective assistance of counsel on his first direct appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387 (1985); *Douglas v. California*, 372 U.S. 353 (1963). But for "good cause" purposes I need not go so far as to find an actual deprivation of the right to counsel. Counsel's failure to pursue these appeals, whether or not of constitutional dimension, may nevertheless constitute good cause for Baker's failure to exhaust available state court remedies. Thus, for example, counsel's failures in collateral proceedings, where no right to counsel attaches, nevertheless may constitute good cause to excuse a procedural default. *See Martinez v. Ryan,* 132 S. Ct. 1309, 1312 (2012) (where a state requires that allegations of ineffective assistance of counsel be pursued in a collateral proceeding, ineffectiveness of counsel in collateral proceeding may furnish "cause" for procedural default); *Trevino v. Thaler,* 133 S. Ct. 1911 (2013) (extending *Martinez* to collateral proceeding where state permits ineffective assistance to be raised on direct appeal, but it is highly unlikely that the direct appeal remedy will be effective); *Maples v. Thomas*, 132 S.Ct. 912, 917 (2012) (holding that post-conviction relief attorneys' effective abandonment of the case constitutes cause to excuse procedural default); *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (holding that "counsel's ineffective assistance - in the form of neglecting to file a direct appeal of his sentence - satisfies the cause and prejudice exception to procedural default"). *A fortiori* such lapses may furnish good cause for a stay.

21

(2) Are Baker's unexhausted claims potentially meritorious?

Each of Baker's two § 2254 petitions contains four claims. The first three are parallel: (1) denial of presentation of newly discovered DNA evidence of actual innocence; (2) denial of counsel on appeal; and (3) *Kyles/Brady* violation based on the prosecution's withholding of evidence seized in connection with Baker's arrest. Claim (4) of the Union County petition is that Baker was denied his right to confront the gas station attendant, who did not testify. Claim (4) of the Middlesex County petition is that Baker was denied the right to present witnesses.

The first two grounds present potentially meritorious claims. I do not, indeed cannot, rule definitively, but I find enough merit there to warrant a stay. [8]

*a. Newly discovered DNA evidence*

In addition to the Union and Middlesex County robberies that are the subject of this habeas petition, Baker was charged with a third robbery, this one in Somerset County. Witnesses said that all three robberies were committed by an African-American man carrying a black bag and a handgun; in the Union County robbery only, the man wore a ski mask. Although the Somerset County robbery was committed first, the Somerset case had not yet been tried when Baker was convicted of the Union and Middlesex robberies. The Somerset County judge ruled that the ski mask, black bag and handgun found near the site of the Union County robbery would be admitted in evidence. He also granted Baker's motion to have the ski mask tested for DNA. The DNA extracted from the mask turned out to match the DNA of a suspect (not Baker) who had been arrested in April 2003 for a masked, armed robbery in Jersey City. On April 3, 2008, the Somerset charges were dismissed.

---

[8]  I again emphasize that these are claims; they have not been established factually.

Seemingly, in the Somerset case the mask would have been "other crimes" or 404(b) evidence. It was direct evidence only of the Union County robbery of which Baker had already been convicted. And now the value of the mask had allegedly been undermined by DNA testing.

On initial review I find that this claim has enough potential merit to warrant further scrutiny. *See Han Tak Lee v. Glunt*, 667 F.3d 397, 407 (3d Cir. 2012) (reversing denial of § 2254 relief without discovery on "claims that newly developed scientific evidence establishes that the expert testimony at his trial was fundamentally unreliable, in violation of due process, and that Lee is actually innocent"); *but see Herrera v. Collins*, 506 U.S. 390 (1993) ( "actual innocence" not sufficient for habeas relief, short of a showing of a constitutional violation at trial)

b. *Denial of counsel on appeal*

Baker's claim that he was unconstitutionally denied counsel on appeal also has sufficient facial merit to support a stay. On remand from the Appellate Division, Baker was represented by counsel in his motions for a new trial. Those motions were denied, but counsel did not file a notice of appeal (which would have encompassed only the new trial motion in Union County, but all issues in Middlesex County). Baker later filed his own, untimely notice of appeal, but did not properly support his application to file it out of time. Judge Stern opined that the Public Defender "should" represent Baker, copied the Public Defender on his order, and essentially invited the filing of a properly supported *nunc pro tunc* motion.[9] Baker says that he sought representation from the Public Defender for this purpose, but was refused.

---

[9] Judge Stern was clear on the point:
> The motion for leave to appeal as within time is denied, and the appeal is dismissed without prejudice to a motion for leave to appeal as within time accompanied by a certification indicating defendant's efforts to seek a timely appeal as to each matter he seeks to appeal. See State v. Molina, 187 N.J. 531, 542 (2006). We add, however, that as the Public Defender represented defendant in both A-3855-04T4 and A-3867-04T4 (Union 02-10-1265 and Middlesex 02-10-1239), he should be represented by that office

The constitutional right to counsel on a convicted defendant's first, direct appeal as of right is well established as a matter of Supreme Court case law.[10] It is at best unsettled that the right extends any farther. *See generally Coleman v. Thompson*, 501 U.S. 722 (1991) ("a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review"); *Hernandez v. Greiner*, 414 F.3d 266, 270 (2d Cir. 2005) ("Thus, the existence of a constitutional right to counsel on a second-level appeal is in doubt; the existence of the right on a *discretionary* second-level appeal is still further in doubt; and it is only slightly less doubtful that the right exists as to a second-level appeal available to a litigant after judicial discretion has been exercised to permit such an appeal.").

It can be an issue whether a particular proceeding is to be treated as a first, direct appeal. That issue tends to center around the question of whether the proceeding is directed toward the correction of legal error at trial. The underlying rationale is that a defendant should have counsel for his one "first chance" as of right to attack the merits of his conviction and sentence. State law and procedure are obviously highly relevant to the characterization of such an appeal.

---

as both matters involved remands for proceedings defendant now seeks to have reviewed, and the Middlesex County conviction was never reviewed. A copy of this order shall be sent directly to Linda Biancardi, Assistant Public Defender, William Welaj, Esq., designated counsel in A-3855-04T4, and David Ruhnke, Esq., who represented defendant on the remand proceedings.
(Civ. No. 09-3710, ECF No. 18-65).

[10] *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (defendant entitled to new appeal on due process grounds where state court dismissed direct criminal appeal based on counsel's failure to file required statement of appeal); *Rodriguez v. United States*, 395 U.S. 327 (1969) (where counsel failed to file a notice of appeal, despite being instructed by defendant to do so, defendant was entitled to vacate the conviction under § 2255 without further showing); *Douglas v. California*, 372 U.S. 353 (1963) (where indigent defendants requested, and were denied, the assistance of counsel on direct appeal, state court's dismissal of appeal violates Fourteenth Amendment); *United States v. Shedrick*, 493 F.3d 292 (3d Cir. 2007) (where trial counsel failed to file timely direct appeal, despite defendant's request, and District Court had denied motion for enlargement of time to submit notice of appeal *nunc pro tunc*, Third Circuit reversed order denying § 2255 motion and remanded for re-entry of initial sentence so that there can be a timely appeal).

Here, defendant appealed, but his case was wholly (Middlesex) or partially (Union) remanded without a determination on the merits, so that he could pursue in the Law Division his motion for a new trial. Was Baker's subsequent return to the Appellate Division in effect a resumption of his first appeal as of right? Judge Stern seemed to think so. The issue is sufficiently meritorious to warrant exploration.

(3) Did Baker adopt intentionally dilatory tactics?

The dockets in Baker's § 2254 cases, and the records of the underlying criminal cases, show that Baker vigorously and consistently pursued his rights. Nothing before this Court suggests that Baker used dilatory tactics, nor are there indications that he possesses any special motive for delay.

In summary, there is a sufficient showing that Baker had good cause for failing to exhaust his state remedies; at least two of his unexhausted claims seem to possess some merit; and there is no indication that he engaged in dilatory tactics. This Court will grant a stay while he exhausts whatever state remedies may remain. *See Rhines*, 544 U.S. at 278 ("[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if [these three criteria were met]").

Baker would doubtless prefer to proceed directly to the merits in his federal habeas case. But since none of Baker's claims have been exhausted, this Court lacks the authority to grant habeas relief. *See* 28 U.S.C. 2254(b)(1)(A); *Carracosa v. McGuire*, 520 F.3d 249, 254 n.10 (3d Cir. 2008) ("[S]ection 2254(b)(2) does not provide the district court with the authority to grant relief on the merits where the petitioner fails to exhaust state remedies.") (quoting *Lambert*, 134

F.3d at 515). Thus, a stay and abeyance, with this Court retaining jurisdiction while Baker exhausts his state court remedies, is the logical course.

E. Appointment of Counsel

The Court is concerned that, after a stay is granted, these claims may continue to languish. I here add my voice to that of Judge Stern, and urge the State to help ensure that the Public Defender reanalyzes (and grants, if appropriate) Baker's request for representation. Federalism requires that the State have the first, full and fair opportunity to deal with claims of error. If the State fully considers such grounds, and the defendant has the representation to which he is entitled, the case for federal involvement may be much weaker. If the State does not, however, a federal habeas court may be compelled to conclude, for example, that the denial of counsel satisfies certain prerequisites for federal relief, and proceed accordingly.

## III. CONCLUSION

Based on the foregoing, this Court will stay the Amended Petitions in consolidated Civil Numbers 09-3654 and 09-3710, terminating them administratively but retaining jurisdiction while Baker exhausts state court remedies.

KEVIN MCNULTY
United States District Judge

Dated: September 9, 2013